UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RICARDY DUMERVIL,

                    Petitioner,

        - against -

JULIA WOLCOTT,[1]

                    Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-7380 (PKC)

PAMELA K. CHEN, United States District Judge:

      Petitioner Ricardy Dumervil ("Petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his July 27, 2017 conviction after a jury trial in New York Supreme Court, Queens County, of Sex Trafficking under New York Penal Law § 230.34(5)(a), Promoting Prostitution in the Second-Degree under New York Penal Law § 230.30(1), and Promoting Prostitution in the Third-Degree under New York Penal Law §§ 230.25(1) and (2). (*See* Pet., Dkt. 4, at ECF 1.)[2] For the reasons set forth below, the petition is denied.

---

[1] Respondent Julie (i.e., not Julia) Wolcott is the Superintendent of Attica Correctional Facility, where Petitioner is currently imprisoned. (*See* Petition ("Pet."), Dkt. 4, at ECF 1; Notice of Mot. to Seal State R., Dkt. 9 (sealed), at ECF 1.) Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[2] Petitioner initially filed his petition on November 28, 2022. (*See* Dkt. 1.) However, on December 6, 2022, the Clerk of Court issued a Notice of Deficient Filing, directing Petitioner to sign his petition and either pay the $5 filing fee or file a request to proceed *in forma pauperis*. (*See* Dkt. 2.) On December 19, 2022, Petitioner re-filed his petition with the previously missing information (*see* Pet., Dkt. 4; *see also* Dkt. 1-2, at ECF 15), and filed an *in forma pauperis* motion which the Court granted on January 3, 2023 (*see* Dkt. 6). Petitioner later paid the $5 filing fee. (Dkt. 7.)

## BACKGROUND

### I.   Underlying Facts[3]

In early 2014, eighteen-year-old EJ[4] met Petitioner[5] through her friend FG when EJ and FG were both residing at ACMH,[6] an independent living center in Queens.  (*See* Tr.,[7] Dkt. 13, at ECF 232:1–234:4.)  Shortly afterwards, EJ and Petitioner developed a romantic relationship.  (*See id.* at ECF 235:17–237:9.)  However, that relationship quickly changed.  Petitioner asked EJ to engage in prostitution and promised that she could keep half her earnings, to which EJ agreed.  (*See id.* at ECF 237:23–238:22.)  Meanwhile, Petitioner started to become violent with EJ.  (*See id.* at ECF 242:15–243:9; 246:10–251:5.)  FG also engaged in prostitution for Petitioner and often got hit by him as well.  (*See id.* at ECF 240:6–241:7; 253:11–17.)

A few months later, EJ left ACMH and moved to Petitioner's place in Queens, during which period EJ continued to engage in prostitution and gave her earnings, along with her Social Security checks, to Petitioner.  (*See id.* at ECF 244:9–245:15.)  Petitioner's violence toward EJ

---

[3] Because Petitioner has already "been found guilty of the crime[s] charged," the Court construes the facts "in the light most favorable to the prosecution."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State . . . .").

[4] In order to protect the identity of the victims of Petitioner's sex offenses, pursuant to New York Civil Rights Law § 50–b, the Court will refer to the victims' first and last initials.  *See* N.Y. Civ. Rights Law § 50–b; *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 109 n.4 (2d Cir. 2000) (noting that the court would refer to victims of sex offenses by initials due to New York Civil Rights Law § 50–b's provision that victim identities are to be kept confidential by the state).

[5] EJ also referred to Petitioner as "Dirty" during her testimony at the state court trial.  (*See, e.g.*, Tr., Dkt. 13, at ECF 233:6–234:8.)

[6] If "ACMH" is an acronym, the full name of the center was not elicited at the state court trial.

[7] "Tr." generally refers to the transcript of the state trial court proceedings.

continued after EJ moved in with Petitioner; he hit EJ frequently for different reasons, including when EJ expressed her desire to stop working in prostitution for Petitioner.  (*See id.* at ECF 246:10–251:5.)

In early 2015, after Petitioner beat FG, EJ and FG decided to escape from him and ended up traveling to the 13th Precinct to report Petitioner's conduct to New York City Police Department ("NYPD") detectives.  (*See id.* at ECF 18:21–22:12; 278:3–279:14; 280:4–16.) However, feeling scared, EJ returned to Petitioner's place, leaving FG at the precinct.  (*See id.* at ECF 279:16–280:22.)  NYPD officers recorded FG's injuries and obtained a search warrant for Petitioner's house in Queens.  (*See id.* at ECF 22:13–24.)

## II.     The Arrests and the Charges

In the early hours of March 7, 2015, Petitioner and EJ were arrested by NYPD officers as they were executing a search warrant.  (*See id.* at ECF 3:23–9:10; 22:25–28:17.)  During the arrest, officers recovered from Petitioner and his house, *inter alia*, two cellphones that contained photos of EJ and FG, as well as their birth certificates.  (*See id.* at ECF 28:22–29:13; 474:7–475:20.) Those photos had previously been posted in the escort advertisement section on Backpage.com, an online classified website.  (*See id.* at ECF 318:23–321:4; 385:2–17; 395:18–399:15.)  Based on these acts, Petitioner was charged with, *inter alia*, sex trafficking and promoting prostitution.[8]  (*See id.* at ECF 318:23–321:4; 385:2–17; 395:18–399:15.)  Petitioner was placed under arrest for a

---

[8] EJ was charged with burglary, which was later dismissed.  (*See id.* at ECF 373:24–375:1 ("Q. Ms. Latimer became your lawyer and in the interim, you got indicted by the Grand Jury of Queens County for Burglary in the Second Degree, right?  A. Yeah.  Q. And you went to court and you were arraigned and you were told what the charges were, right?  A. Yes. . . . Q. [The prosecution] dropped the charge against you for the Burglary, correct?  A. They did.").)

second time on January 13, 2016 for his conduct towards EJ,[9] and was charged with similar offenses as to her, including sex trafficking, kidnapping, and promoting prostitution.  (*See id.* at ECF 30:19–31:4; 488:25–489:4.)

After Petitioner rejected a plea offer from the prosecution, the case proceeded to trial on June 15, 2017.  (*See id.* at ECF 55; 56:17–57:7.)

## III.    Trial

After opening statements, one of the jurors ("Juror Number Two" or "Juror") informed the court that she would be unavailable for at least one and one-half days during trial to take her son to a medical appointment at Memorial Sloan Kettering Cancer Center and to attend her child's graduation.  (*See id.* at ECF 220:11–13; 223:10–224:6.)  Over defense counsel's objection, the trial court dismissed the Juror.  (*See id.* at ECF 228:24–229:1.)

At trial, the prosecution introduced documentary evidence that included the Backpage.com advertisements depicting EJ and FG and advertising their sexual services (*see id.* at ECF 395:18–399:15), photos of EJ and FG from Petitioner's phone (*see id.* at 328:12–331:4), and Petitioner's Facebook profile advertising EJ's and FG's sexual services (*see id.* at ECF 286:1–298:20). Besides documentary evidence, the prosecution also presented the testimony of nine witnesses, including EJ.  Multiple witnesses testified about Petitioner's involvement in sex trafficking and promoting prostitution.  (*See generally id.* at ECF 231:7–381:14 (testimony of EJ); 384:24–405:5 (testimony of Nathan Yockey (representative from Backpage.com)); 405:20–427:21 (testimony of NYPD Detective Scott Velazquez); 429:12–453:2 (testimony of NYPD Officer Rosario Monterio ("Officer Monterio")); 460:8–502:6 (testimony of NYPD Detective George Munoz); 511:3–521:3

---

[9] At the time of Petitioner's second arrest, he had been held in custody.  (*See id.* at ECF 41:18–42:1.)

(testimony of Yuta Ramnarain (nurse at Jamaica Hospital)); 521:20–555:18 (testimony of NYPD Sergeant Gregory Graves); 559:3–561:25 (testimony of Queens District Attorney's Office Detective Technician Kenneth Marini); 562:13–583:6 (testimony of Queens District Attorney's Office Sergeant Allen Schwartz).)

During EJ's direct examination, defense counsel objected when the prosecutor asked EJ about her use of medication at ACMH.  (*See id.* at ECF 254:3–13.)  At sidebar, the prosecutor explained that EJ's medication was for bipolar disorder, which the prosecutor had only learned about the day before, during a trial preparation session with EJ.  (*See id.* at ECF 254:25–255:4.) Based on this disclosure, defense counsel argued that the prosecution "failed to disclose *Brady* material" by not disclosing EJ's medication status and psychiatric history, and accordingly moved for a mistrial, which the trial court denied.  (*See id.* at ECF 255:6–258:18.)  In addition, the prosecution presented the testimony of Officer Monterio, who testified about her unsuccessful efforts to locate FG prior to and during the trial.  (*See id.* at ECF 437:2–15; 450:16–452:19.)

Near the end of the trial, defense counsel asked the court to give a missing witness instruction as to FG, arguing that FG had "testified before the grand jury" and was "clearly a material witness."  (*See id.* at ECF 600:2–18.)  The Court rejected Petitioner's missing witness charge request.  (*See id.* at ECF 603:6–8.)

At the conclusion of the trial, Petitioner was found guilty of two counts of Sex Trafficking (New York Penal Law § 230.34(5)(a)), two counts of Promoting Prostitution in the Second Degree (New York Penal Law § 230.30(1)), and three counts of Promoting Prostitution in the Third Degree (New York Penal Law §§ 230.25(1) and (2)).  (*See id.* at ECF 702:18–705:17.)

On July 27, 2017, the trial court sentenced Petitioner to 12 and-a-half years to 25 years on the first sex trafficking conviction, 7 and-a-half years to 15 years on the second-degree promoting

prostitution conviction to run concurrently with the first sex trafficking offense, and 3 and-a-half years to 7 years on the third-degree promoting prostitution conviction, to run concurrently. (*See id.* at ECF 723:16–724:1.) On the second sex trafficking conviction, the trial court sentenced Petitioner to 12 and-a-half to 25 years to run consecutively to the previous three counts. (*See id.* at ECF 724:1–4.) On the second promoting prostitution in the second-degree conviction, the trial court sentenced Petitioner to 7 and-a-half to 15 years to run concurrently with the second sex trafficking count (*see id.* at ECF 724:5–9), and sentenced Petitioner to a minimum of 3 and-a-half years to 7 years on the two remaining promoting prostitution in the third-degree counts (*see id.* at ECF 724:9–16).

## IV.    Direct Appeal

Petitioner appealed his convictions and sentence to the Appellate Division, Second Department ("Appellate Division"). (App. Div. Br., Dkt. 13-1, at 1.) On May 18, 2022, the Appellate Division affirmed the trial court's judgment. *People v. Dumervil*, 166 N.Y.S.3d 595, 595 (N.Y. App. Div. 2022). On July 27, 2022, the New York Court of Appeals denied Petitioner leave to appeal the Appellate Division's decision. *People v. Dumervil*, 193 N.E.3d 528 (N.Y. 2022). Petitioner did not petition the United States Supreme Court for a writ of certiorari.

## V.    The Instant Petition

Petitioner's instant habeas petition was timely filed on November 28, 2022.[10] (*See* Dkt. 1.) On April 3, 2024, Respondent filed its opposition. (*See* Dkt. 11.)

---

[10] The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on petitions seeking habeas relief from a state court judgment. 28 U.S.C. § 2244(d)(1). The one-year period runs from the date on which one of the following four events occurs, whichever is latest: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by

**LEGAL STANDARD**

A federal district court may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a [s]tate court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order to obtain relief, such a petitioner must demonstrate, *inter alia*, that he has: (1) exhausted his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal habeas review; and (3) satisfied the deferential standard of review set forth in AEDPA, if his appeals were decided on the merits. *See, e.g.*, *Georgison v. Donelli*, 588 F.3d 145, 153 (2d Cir. 2009); *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 365–66 (E.D.N.Y. 2013).[11] Where a state court has reached the merits of a claim

_____

such state action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). A judgment of conviction becomes "final" within the meaning of 28 U.S.C. § 2244(d)(1)(A) upon completion of a defendant's direct appeal in the state's highest court and either (a) completion of proceedings before the United States Supreme Court if the petitioner chooses to file for a writ of certiorari, or (2) the expiration of time to file such a writ. *Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001); U.S. Sup. Ct. R. 13(1). A *pro se* prisoner's habeas petition is deemed filed at the moment he gives it to prison officials for mailing to the court. *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (per curiam). Here, Petitioner's state court judgment became final on October 25, 2022, the day on which the 90-day period for him to seek a writ of certiorari expired. Thus, Petitioner's filing of this habeas action on November 28, 2022, which was approximately a month after October 25, 2022, was timely.

[11] The Court notes that Petitioner's federal habeas claims are both exhausted and not procedurally barred. (*See* App. Div. Br., Dkt. 13-1, at 28–33, 39–51; June 13, 2022 Appl. for Permission to Appeal to the N.Y. Ct. of Appeals, Dkt. 11-3, at 2 ("Appellant seeks to leave to appeal upon all the grounds in the [] Brief for Defendant-Appellant below, including all state and federal constitutional claims raised therein."); July 7, 2022 Letter, Dkt. 11-4, at 2–3 (listing grounds on appeal to the Appellate Division and stating that "Appellant contends that he was deprived of a fair trial for the reasons explained in his brief on appeal"); Pet., Dkt. 4, at ECF 5–10 (listing grounds for federal habeas petition)); *Dumervil*, 166 N.Y.S.3d at 595–96 (addressing claims raised in the present Petition on the merits).

asserted in a Section 2254 petition, the state court's decision is entitled to deference under AEDPA and the petition must be denied unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d); *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017).  A state court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court," or "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,'" the state court arrived at an opposite result.  *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  A state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  "[A]n *unreasonable* application of federal law," however, "is different from an *incorrect* application of federal law." *Id.* at 410; *see Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable.").  A federal court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Orlando v. Nassau Cnty. Dist. Att'ys Off.*, 915 F.3d 113, 120–21 (2d Cir. 2019).

**DISCUSSION**

Petitioner challenges his convictions and seeks habeas relief on four grounds:[12] (1) the trial court deprived Petitioner of his right to a jury of his choice by discharging, after opening statements, a sworn juror; (2) the prosecution committed a *Brady* violation by failing to disclose before EJ's direct examination that she had a recent psychiatric history and had stopped taking her psychiatric medications shortly before the alleged incidents; (3) the trial court deprived Petitioner of his right to a fair trial when it refused to deliver a missing witness instruction regarding FG, one of the complainants in the case; and (4) the prosecutor deprived Petitioner of a fair trial "when [she] made herself an unsworn witness on material matters" in summation.[13]  (*See* Pet., Dkt. 4, at ECF 5–10.)  The Court finds that none of Petitioner's claims have merit and therefore denies the Petition in full.

**I.      Juror Dismissal**

As the first basis for his habeas petition, Petitioner asserts that the trial court's dismissal of Juror Number Two after opening statements "depriv[ed] [him] of [his] right to [a] jury trial of his choice."  (Pet., Dkt. 4, at ECF 5.)  Respondent argues that Petitioner's claim is based entirely on state law and therefore not cognizable on federal habeas review.  (Resp't's Mem. in Opp'n

---

[12] Because Petitioner in this case is *pro se*, the Court liberally construes the Petition and interprets it "to raise the strongest arguments that [it] suggest[s]."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  At the same time, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"  *Id.* at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *accord O'Neal v. New York*, 465 F. Supp. 3d 206, 216 (E.D.N.Y. 2020).

[13] Petitioner raised the same four grounds in his direct appeal, as well as two others: (1) the prosecution failed to prove Petitioner's guilt of all of the crimes of conviction beyond a reasonable doubt, and the verdict on those counts were against the weight of the evidence; and (2) his sentence was excessive, in light of errors in the presentence report, his background, the fact that the jury had acquitted him of some counts in the indictment, and the fact that the prosecution's pretrial plea offer was close to the minimum.  (*See* App. Div. Br., Dkt. 13-1, at 28–54.)

("Resp't's Opp'n"), Dkt. 11, at 22–25 ("[T]he propriety of the trial court's ruling dismissing an unavailable juror pursuant to section 270.35 of the New York Criminal Procedure Law is a question of state law. . . . Accordingly, the state court's ruling does not create a constitutional claim reviewable by this Court.").)  The Court disagrees.

Though a claim based on a trial court's alleged misapplication of New York Criminal Procedure Law § 270.35 would not be cognizable on federal habeas review, *see Troche v. LaManna*, No. 19-CV-2825 (BMC), 2019 WL 2619339, at \*4 (E.D.N.Y. June 26, 2019) ("Although the heading of [the petitioner's] brief point referenced 'the United States Constitution Article I [*sic*] § 2,' and he included a sentence that 'a defendant has a constitutional right to a trial by a particular jury chosen according to law . . . ,' the argument was based entirely on the alleged misapplication of [New York Criminal Procedure Law] § 270.35 and state cases construing it. . . . [Such an] alleged violation is not cognizable on habeas corpus review."), here, Petitioner has fairly presented a federal claim to the Appellate Division that is cognizable for review, *see Holder v. Lamanna*, No. 18-CV-7431 (PKC), 2020 WL 804902, at \*4–5 (E.D.N.Y. Feb. 18, 2020).  A habeas petitioner "fairly present[s]" a federal claim, even without citing "book and verse on the federal constitution," when "the legal basis of a claim made in state court is the 'substantive equivalent' of the habeas claim." *Wilson v. Heath*, 938 F. Supp. 2d 278, 288 (N.D.N.Y. 2013) (citing *Picard v. Connor*, 404 U.S. 270, 278 (1971)); *see also id.* ("This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." (quoting *Daye v. Att'y Gen. of State of New York*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc))).  Specifically, a court looks at four factors to determine whether a habeas petitioner has fairly presented a federal claim: (1) "reliance on pertinent federal cases employing constitutional analysis"; (2) "reliance on state cases employing constitutional analysis in like fact situations"; (3)

"assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution"; and (4) "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 288 (quoting *Daye*, 696 F.2d at 194).

Here, although Petitioner's state court appellate brief did not cite to any federal case law (*see* App. Div. Br., Dkt. 13-1, at ECF 36–41), "[a]llegations of improper juror dismissal evoke the Sixth Amendment right to an impartial jury and the Fourteenth Amendment right to due process." *Baston v. Artus*, No. 08-CV-3425 (RJD), 2010 WL 5067696, at *2 n.1 (E.D.N.Y. Dec. 6, 2010) (internal quotation marks and citations omitted). Therefore, the Court finds that Petitioner did fairly present his federal constitutional claim to the Appellate Division, entitling him to review of that claim on the merits. *See, e.g.*, *Johnson v. Conway*, No. 07-CV-445 (LEK) (DRH), 2008 WL 2405709, at *6 (N.D.N.Y. June 11, 2008) (finding petitioner's juror disqualification claim was fairly presented because the legal basis of the claim was the "substantial equivalent of his habeas claim," even though the petitioner did not cite to any federal caselaw (internal quotation marks omitted)); *Carrasco v. David*, No. 00-CV-5693 (LTS) (JCF), 2002 WL 1205750, at *5 (S.D.N.Y. June 4, 2002) (finding that factual "[a]llegations of improper juror dismissal [that] evoke[d] the Sixth Amendment right to an impartial jury" were sufficient to allow for federal habeas review).

Because the Appellate Division rejected Petitioner's juror-dismissal claim on the merits, *see Dumervil*, 166 N.Y.S.3d at 595–96, the Court applies AEDPA deference and finds that this claim fails, *see* 28 U.S.C. § 2254(d); *Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003).

"Decisions to dismiss jurors are reversed only in cases of 'clear abuse' of the court's discretion." *Cabassa v. Filion*, No. 03-CV-2920 (DC), 2004 WL 1367503, at *7 (S.D.N.Y. June 16, 2004) (quoting *United States v. Nelson*, 277 F.3d 164, 202 (2d Cir. 2002)); *see also United States v. Rosario*, 111 F.3d 293, 299 (2d Cir. 1997) ("[A] trial judge is vested with very broad

11

discretion to deal with problems that arise in connection with jury deliberations or a juror's fitness to deliberate."). The "substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party." *Shepard v. Artuz*, No. 99-CV-1912 (DC), 2000 WL 423519, at *5 (S.D.N.Y. Apr. 19, 2000) (quoting *United States v. Millar*, 79 F.3d 338, 342 (2d Cir. 1996)). Furthermore, "a trial court's finding that a sworn juror was not fit for further service is a factual determination that is entitled to a presumption of correctness unless unsupported by the record." *Hughes v. Phillips*, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006) (citing, *inter alia*, *Marshall v. Lonberger*, 459 U.S. 422 (1983)).

Here, the trial court properly exercised its discretion in dismissing Juror Number Two. Under New York Criminal Procedure Law § 270.35, a trial court must discharge a juror "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving by reason of illness or other incapacity[.]" N.Y. Crim. Proc. Law § 270.35(1). Petitioner argues that the trial court erred by discharging Juror Number Two "as a result of [Juror Number Two] needing a day and a half off to take her son to medical treatment and to attend a graduation" and after Juror Number Two "stated [she] would be available to continue serving after the brief adjournment." (Pet., Dkt. 4, at ECF 5.) Petitioner's argument is unavailing.

After learning about Juror Number Two's unavailability for at least a day and a half during the trial, the judge told counsel about it on the record and gave them an opportunity to be heard on whether to excuse the juror (*see* Tr., Dkt. 13, at ECF 220:11–221:18; 223:9–227:24), all of which is consistent with New York Criminal Procedure Law § 270.35. In deciding to excuse Juror Number Two, the trial court explained:

> Given the fact that the jury has not heard testimony yet. We selected them last Tuesday and moved the opening statements to Wednesday. We assured each [of] them it would be a short trial; it would be concluded sometime this week. If we keep [Juror Number Two] [that] means we cannot complete testimony today. We

cannot complete testimony for the balance of the week and we couldn't sum and [c]harge until after the fourth of July.  We have two alternates and I think it would be an unfair imposition on the balance of the jury if we don't substitute one of the jurors for the sake of continuity.  In addition, the Assistant District Attorney is going to call their main witness today who is going to allege that she was the sole victim of this indictment[.]

(*Id.* at ECF 224:7–20; *see also id.* at ECF 227:20–23 ("[Dismissing Juror Number Two] is not for convenience.  It is for the sake of the other jurors or who have not heard testimony yet and with respect to her needing off this afternoon[.]").)   Finally, before excusing the Juror, the court confirmed her unavailability for at least a day and a half during the trial:

The Juror: . . . Before I continue, [] last week, I mentioned I have to leave at 12 today.

The Court: That is why I am bringing you out today.  I wanted to know whether anything has changed?  [Y]ou have to take your son to the hospital?

The Juror: Yes.

The Court: And you need off Thursday for graduation?

The Juror: Yes.

The Court: Nothing has change[d] between what you told us last week and this week?

The Juror: No.

The Court: Are you okay?

The Juror: Yes, I am okay.  I am a little bit worried about my child of course.

The Court: Don't worry about your child[.]  [W]e'll release you now.

(*Id.* at ECF 228:9–25.)  After questioning the Juror, the trial court dismissed her.  (*See id.* at ECF 228:24–29:2.)  Given that the trial court appropriately followed the procedure required by New York Criminal Procedure Law § 270.35 by "properly inquir[ing] into the reason for the [J]uror's unavailability and determin[ing] that she was, effectively, unavailable on the date set by the court for continuation of the trial," *Dumervil*, 166 N.Y.S.3d at 596, the trial court's actions plainly do

not constitute an abuse of discretion under that statute.  *See Wheeler v. Phillips*, No. 05-CV-4399 (JFB), 2006 WL 2357973, at *6 (E.D.N.Y. Aug. 15, 2006) (finding that a petitioner's Sixth Amendment rights were not violated when, pursuant to New York Criminal Procedure Law § 270.35, "[t]he trial court cited several reasons for the dismissal of each juror, none of which constituted an abuse of discretion under the applicable statute").

In any event, even assuming, *arguendo*, that the trial court erred by dismissing Juror Number Two, Petitioner would still not be entitled to relief because he has not demonstrated that he was prejudiced by the dismissal of the Juror.  "[N]o constitutional claim can arise from the substitution of one juror for another unless the petitioner can demonstrate that the replacement juror was biased or otherwise unfit to serve."  *Council v. Capra*, No. 14-CV-1849 (PKC) (MHD), 2015 WL 13746663, at *14 (S.D.N.Y. Sept. 24, 2015), *R. & R. adopted*, 2016 WL 165022 (S.D.N.Y. Jan. 14, 2016); *Johnson v. Artuz*, No. 00-CV-6106 (MAT), 2006 WL 1144513, at *7 (W.D.N.Y. May 1, 2006) (rejecting a petitioner's claim when he "failed to establish that the substitution resulted in any prejudicial impact on the outcome of his trial").  Here, Petitioner does not cite to any evidence to suggest that the trial court's decision to dismiss Juror Number Two affected the outcome of his trial or that the juror who replaced the dismissed juror was biased or otherwise unfit to serve.  "Since [Petitioner] has in no way established the partiality of the jury that ultimately convicted him, he may not successfully claim deprivation of his [S]ixth [A]mendment or due process rights."  *United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989).

Accordingly, the Appellate Division's rejection of Petitioner's fair trial claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence

presented in the state trial proceedings.  Petitioner's request for habeas relief on this ground is therefore denied.

## II.    *Brady* Claim

Petitioner next argues that he is entitled to habeas relief because the prosecution "committed a *Brady* violation when they failed to disclose, until the middle of their direct examination of [EJ], [that EJ] had a recent psychiatric history and had stopped taking [her] psychiatric medication shortly before the alleged incidents[.]"  (Pet., Dkt. 4, at ECF 7.)  On direct appeal in state court, the Appellate Division held that "[t]here is no merit to the defendant's contention that he is entitled to a new trial because the [prosecution's] one-day delay in disclosing the testifying complainant's history of using medication for bipolar disorder and ADHD constituted a *Brady* violation."  *Dumervil*, 166 N.Y.S.3d at 596.  This Court agrees.

"It is well established that prosecutors have a clear and unconditional duty to disclose all material, exculpatory evidence to the defense."  *Bisnauth v. Morton*, No. 18-CV-4899 (JFB), 2021 WL 3492746, at *17 (E.D.N.Y. Aug. 9, 2021) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). To demonstrate a *Brady* violation, "a defendant must show that; (1) the Government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice."  *Id.* (quoting *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001)).  "Evidence is not suppressed for the purposes of *Brady* if defense counsel knew, or should have known, [of] the essential facts permitting him to take advantage of that evidence."  *Scott v. Connolly*, No. 11-CV-953 (PKC) (LB), 2014 WL 354253, at *10 (E.D.N.Y. Jan. 30. 2014) (internal quotation marks omitted) (quoting *Blalock v. Smith*, No. 08-CV-7528 (JPO), 2012 WL 3283439, at *9 (S.D.N.Y. Aug. 13, 2012)).  "Evidence is favorable to the accused if it is either exculpatory or impeaching."  *Id.*  "To establish prejudice,

a plaintiff must show that the evidence was material." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 124 (2d Cir. 2015). "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Scott*, 2014 WL 354253, at *10 (citing, *inter alia*, *Cone v. Bell*, 556 U.S. 449, 469–470 (2009)).

Petitioner's *Brady* claim fails on all three elements. First, the prosecution only learned of EJ's psychiatric history and use of medication at ACMH during a trial preparation session that occurred the day before EJ testified. (*See* Tr., Dkt. 13, at ECF 254:17–255:4 ("The Court: The question is, what kind of medication. . . . [Prosecution]: For bipolar; she told me during the trial prep. The Court: She never disclosed that before now? [Defense counsel]: That's trial prep. [Prosecution]: Yesterday.").) Although the prosecution did not disclose that information earlier, the record suggests that defense counsel might already have known of EJ's mental health and medication history, (*see id.* at 254:22–254:24 ("The Court: It could be for asthma. Do you know the answer to this? [Defense counsel]: I think I do.")), or that defense counsel should already have had this information considering EJ's treatment history at ACMH. Furthermore, defense counsel was afforded an opportunity to prepare his cross-examination of EJ after learning the information, (*see id.* at ECF 259:3–5 ("The Court: You are not going to cross [EJ] yet. Let['s see what—we will take a break for your cross examination.")), and in fact used that information later to cross-examine EJ, (*see id.* at ECF 356:9–357:5 ("Q. Could you tell us how many years were you taking the medication that the psychiatrist was prescribing for you? A. I was taking medication since I was young. Q. And you told us that when you moved [in with Petitioner] permanently you stopped taking it right? A. Yes. Q. You could still have gotten a prescription, correct, no matter where you lived? A. Yes. Q. So you chose not to take it anymore, correct? A. Yes. Q. No one forced

16

you to stop taking your medication, right?  A.  No.  Q.  And . . . after you were arrested, did you

start taking your medication again?  A.  No.  Q.  Did you ever start taking it again?  A.  No.  Q.

Because you made the decision not to take the medication, right?  A.  Yes.")).  Thus, the evidence

was not suppressed for *Brady* purposes.

Second, there is nothing in the record to show that EJ's medication status and mental health

history was in any way exculpatory or impeaching, and thus favorable to Petitioner.  Specifically,

the cross-examination did not reveal that EJ's conditions had any impact on her "perceptions or

ability to recall," or her credibility as a witness overall.  (*See generally id.* at ECF 333:18–381:12.)

Lastly, "given the overwhelming evidence of [P]etitioner's guilt, the [prosecution's] failure to

disclose [EJ's medication status and mental health history] does not undermine confidence in the

outcome of the trial."  *See Bisnauth*, 2021 WL 3492746, at *17.  As noted *supra*, multiple witnesses

testified about Petitioner's involvement in sex trafficking and promoting prostitution, and the

prosecution also presented substantial documentary evidence to corroborate the testimony of these

witnesses.  "Thus, even if [EJ] had been effectively impeached (or had not testified at all), there is

no basis [to] conclude that the outcome would have been different given the overwhelming

evidence established through . . . other witnesses and [documentary] evidence."  *See id.*

Accordingly, Petitioner's claim for habeas relief on this basis is without merit.

## III.     Missing Witness Charge

Petitioner also argues that his right to a fair trial was violated when the trial court refused

to issue a "missing witness charge"—i.e., an instruction that the jury could draw an adverse

inference from the prosecution's failure to call a witness in their control—regarding co-

complainant FG.  (Pet., Dkt. 4, at ECF 8.)  Petitioner raised this claim at trial, (*see* Tr., Dkt. 13, at

ECF 509:8–10; ECF 600:2–603:10), and again on direct appeal, (*see* App. Div. Br., Dkt. 13-1, at

44–48).  The Appellate Division held that Petitioner "was not entitled to a missing witness charge with respect to [FG,]" because the prosecution "demonstrated that [FG] could not be located despite diligent police efforts, thereby establishing her unavailability to testify[.]" *Dumervil*, 166 N.Y.S.3d at 597.

While the failure to provide a missing witness charge is a matter of state law and is therefore not cognizable under federal habeas review, *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), federal courts may consider whether the failure to provide the missing witness charge violated a petitioner's constitutional rights, *Bisnauth*, 2021 WL 3492746, at *14.  Habeas relief is available only if the trial court's failure to provide a missing witness charge "so infected the entire trial that the resulting conviction violated due process." *Klosin v. Conway*, 501 F. Supp. 2d 429, 444 (W.D.N.Y. 2007) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  Further, "[w]here, as here, the alleged error is one of omission, it 'is less likely to be prejudicial than a misstatement of the law,' thereby making the petitioner's 'burden . . . especially heavy.'" *Crews v. Herbert*, 586 F. Supp. 2d 108, 114 (W.D.N.Y. 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

Under New York law, whether to give a missing witness charge is at the discretion of the trial judge.  *See Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir. 1992).  To obtain a missing witness charge, the party requesting the charge bears the burden of establishing that (1) "the witness's knowledge [is] material to the trial"; (2) "the witness [is] expected to give noncumulative testimony favorable to the party against whom the charge is sought"; and (3) "the witness [is] available to that party." *Zimmerman v. Conway*, No. 10-CV-1393 (ER) (PED), 2018 WL 6413144, at *6 (S.D.N.Y. Dec. 6, 2018) (quoting *People v. Savinon*, 100 N.Y.2d 192, 197 (N.Y. 2003)).

Here, Petitioner fails to show that the trial court abused its discretion by failing to give a missing witness charge as to FG.  Petitioner does not explain how FG would have testified

regarding Petitioner's guilt, and therefore fails to demonstrate that FG's testimony would have been probative or helpful to the jury, whether it would have been non-cumulative of EJ's testimony, or whether it would have been favorable to the prosecution. *Arena v. Kaplan*, 952 F. Supp. 2d 468, 489 (E.D.N.Y. 2013) ("A missing witness charge is not appropriate when the witness's testimony would merely corroborate the testimony of other witnesses." (citing *People v. Keen*, 94 N.Y.2d 533, 539 (N.Y. 2000))); *Zimmerman*, 2018 WL 6413144, at *6 (finding missing witness charge would not have been warranted where petitioner "fail[ed] to establish that any of the four missing witnesses were favorable to the prosecution, and all appear to have in fact been favorable to [p]etitioner"). Further, there is no indication that FG was available to the prosecution; indeed, Officer Monterio testified that, despite conducting frequent searches for FG prior to and during trial, she did not locate her, (*see* Tr., Dkt. 13, at ECF 437:2–15; 450:16–452:19), and the prosecutor noted that she also had not seen or been in contact with FG since the grand jury presentment, (*see id.* at ECF 600:19–601:8).

Even assuming, *arguendo*, that the trial court erred by not giving the missing witness charge, Petitioner has not demonstrated that this error "so infected the entire trial that the resulting conviction violated due process." *See Klosin*, 501 F. Supp. 2d at 444 (quoting *Cupp*, 414 U.S. at 147). Indeed, in the face of overwhelming evidence of Petitioner's guilt—e.g., extensive testimony about Petitioner's involvement in sex trafficking and promoting prostitution, Backpage.com advertisements depicting EJ and FG, photographs of EJ and FG from Petitioner's phone, Petitioner's Facebook profile advertising EJ and FG, and birth certificates of EJ and FG— Petitioner offers nothing to show that the absence of the missing witness charge as to FG so "infected the entire trial" as to deprive Petitioner of due process. *See Toland v. Walsh*, No. 04-CV-773 (GLS), 2008 WL 65583, at *14–15 (N.D.N.Y. Jan. 4, 2008) (denying habeas relief where

possibility that missing witness would give favorable testimony was "based upon nothing other than mere conjecture" and stating that "federal habeas relief cannot be granted upon claims that are rooted in speculation"). Therefore, habeas relief is denied as to Petitioner's missing witness charge claim.

## IV.    Prosecutorial Misconduct

Lastly, Petitioner asserts that he is entitled to habeas relief because of the alleged impropriety of certain comments made by the prosecutor during summation. He argues that "the [p]rosecutor deprived Petitioner of his fair trial right . . . when [the prosecutor] made herself an unsworn witness on material matters in summation." (Pet., Dkt. 4, at ECF 10.)[14]

"[A] federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (internal quotation marks and alterations omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). On direct appeal, the Appellate Division found Petitioner's prosecutorial misconduct claims were "unpreserved for appellate review." *Dumervil*, 166 N.Y.S.3d at 596. Citing Section 470.05(2) of New York Criminal Procedure Law, the Appellate Division based this ruling on New York's "contemporaneous objection rule," which provides that an objection is preserved if the objecting

---

[14] Here, Petitioner makes the same argument that he made, for the first time, on appeal, which the Appellate Division rejected. His argument focuses on two comments by the prosecutor during summation: (1) that the burglary case against EJ was "incapable of being resurrected" (App. Div. Br., Dkt. 13-1, at 49), and (2) that Officer Monterio's efforts to locate FG were "only a piece of the search[,]" which "extended beyond what []Monterio testified to" and "included efforts by 'the police, the law enforcement, [and] the Assistant District Attorney['s] office" (*id.* at 48–49). The Appellate Division held that "the challenged comments were a fair response to defense counsel's summation . . . or fair comment on the evidence and the inferences to be drawn from the evidence . . . . To the extent the comments exceeded the bounds of permissible rhetoric, the comments were isolated and were not so flagrant or pervasive as to have deprived the defendant of a fair trial[.]" *Dumervil*, 166 N.Y.S.3d at 596.

party "(1) made his or her position regarding the ruling known to the trial court; (2) made a protest, and the trial court 'expressly decided the question raised on appeal'; or (3) 'without success . . . either expressly or impliedly sought or requested a particular ruling.'" *Downs v. Lape*, 657 F.3d 97, 102–03 (2d Cir. 2011) (alteration in original) (quoting N.Y. Crim. Proc. Law § 470.05(2)); *see Dumervil*, 166 N.Y.S.3d at 596 (citing N.Y. Crim. Proc. Law § 470.05(2)).

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule" and has observed "that the rule constitute[s] an independent ground for disposing of" a petitioner's claim on habeas review. *Downs*, 657 F.3d at 104; *see also Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999) ("[I]f a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with a contemporaneous objection rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." (internal quotation marks and alteration omitted) (quoting *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990)).

The Court therefore declines to consider Petitioner's claim regarding the remarks made during the prosecutor's summation, given that the Appellate Division found that this claim was not preserved for appellate review. *See Brunson v. Tracy*, 378 F. Supp. 2d 100, 106 (E.D.N.Y. 2005) (holding that the petitioner's prosecutorial misconduct claim did not provide a basis for habeas review when the Appellate Division had found that the petitioner had failed to preserve the claim for appeal); *see also Cromwell v. Smith*, No. 13-CV-29 (KBF), 2014 WL 1280287, at *9 (S.D.N.Y. Mar. 25, 2014) ("[B]ecause there is no dispute that petitioner failed to object to the evidence [at trial], the contemporaneous objection rule provides an adequate and independent ground to support the Appellate Division's rejection of the petitioner's claims.").

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, is denied.  Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen. of N.Y., Pa.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying certificate of appealability where petitioner had not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted) (quoting *Slack v. McDaniel*, 529 U.S. 473, 475 (2000)).  Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is therefore respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 30, 2024
           Brooklyn, New York